IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVONTAE ROSS,
TIMOTHY LUCAS,
STARMANIE JACKSON,
KUSHAWN MOORE, JR., a minor,
by his parent and next friend,
KUSHAWN MOORE, SR.,
ASIA DIXON,
KEITH WILSON, and
KATRINA GARDNER,

On behalf of themselves and all
others similarly situated,                                      Case No. 2:19-CV-11076-LJM-EAS

              Plaintiffs,                      Honorable Laurie J. Michelson
v.                                                              Magistrate Judge Elizabeth A. Stafford

Honorable NANCY M. BLOUNT, in her
official capacity as Chief Judge of
Michigan's 36th District Court;
BARI BLAKE WOOD,
MILLICENT D. SHERMAN,
LAURA A. ECHARTEA,
DAWN WHITE, and
JEFFREY KLEPAREK, in their
official capacities as Magistrates of
Michigan's 36th District Court; and
BENNY N. NAPOLEON, in his
official capacity as Sheriff of Wayne
County, Michigan,

              Defendants.

---

**BRIEF IN SUPPORT OF JUDICIAL DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT
<u>PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 12(b)(1)</u>**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................1

II.   BACKGROUND ........................................................................................2

III.  LEGAL ARGUMENT ................................................................................4

      A.    Standards of Review.........................................................................6

            1.    Plaintiffs' Complaint Fails to State a Claim .............................6

            2.    This Court Lacks Jurisdiction, and, Should Abstain From
                  Awarding Any Relief Under *Younger* ........................................7

      B.    Judicial Immunity Precludes Injunctive Relief and Attorneys' Fees....8

            1.    Magistrate Judge Defendants are Judicially Immune From
                  Plaintiffs' Claims for Injunctive Relief and Attorneys' Fees ...10

            2.    Chief Judge Blount is Judicially Immune From Plaintiffs' Claims
                  for Injunctive Relief and Attorneys' Fees................................14

      C.    This Court Lacks Jurisdiction, and, Should Abstain From Issuing Any
            Relief Under *Younger*..........................................................................16

            1.    Plaintiffs' Claim for Declaratory Relief Lacks the Requisite Case
                  or Controversy...........................................................................17

            2.    Federalism Warrants Abstention...............................................18

                  i.    Granting Declaratory Relief Will Interfere With Ongoing
                        Criminal Proceedings ....................................................19

                  ii.   Michigan has a Profound Interest in Protecting the
                        Community and Ensuring Criminal Defendants'
                        Appearance For Trial......................................................26

                  iii.  Plaintiffs Have An Opportunity to Raise Challenges to
                        Bail in the 36th District Court ........................................27

D.    Plaintiffs Fail to State a Claim Under *Monell* ......................................29

      1.    Chief Judge Blount's Judicial Acts Are Not "Policy" ..............30

      2.    Magistrate Judge Defendants' Judicial Decisions Are Not Expressions of "Policy" ............................................................32

      3.    Plaintiffs Fail to Allege a 36th District Court "Policy" That is the "Moving Force" Behind Claimed Injuries................................34

E.    Plaintiffs Fail to State a Sixth Amendment Claim ..............................35

IV.    CONCLUSION..................................................................................................39

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v. DeBello*, 861 F.3d 433 (3d Cir. 2017). ...........................................................9

*Am. Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328 (6th Cir. 2007) ..........................................................................................................19

*Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988 (6th Cir. 2017) .............35

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 6, 7, 16

*Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397 (1997)........................35

*Bright v. Gallia Cty.*, 753 F.3d 639 (6th Cir. 2014) ...................................................8

*Brown v. Reinhardt*, 2019 WL 325126 (4th Cir. Jan. 23, 2019) ...............................5

*Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013). ..................................................30

*Carroll v. City of Mount Clemens*, 139 F.3d 1072 (6th Cir. 1998). ................. 18, 27

*Chaplin v. Anderson*, 2019 WL 1219412 (E.D. Mich. Mar. 15, 2019)...................17

*City of Canton v. Harris*, 489 U.S. 378 (1989)........................................................35

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) ....................................... 31, 32

*Coleman v. Gov. of Michigan*, 413 Fed. App'x 866 (6th Cir. 2011)............... 15, 16

*Collins v. Daniels*, 916 F.3d 1302 (11th Cir. 2019) ................................................16

*Connick v. Thompson*, 563 U.S. 51 (2011)..............................................................30

*Cooper v. Rapp*, 702 Fed. App'x 328 (6th Cir. 2017). .................................... 13, 17

*D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir. 2014)............................... 29, 30, 34

*Dye v. Hofbauer,* 197 Fed. App'x 378 (6th Cir. 2006)............................................11

*El-Amin v. Downs*, 272 F.Supp.3d 147 (D. D.C. 2017)...........................................33

*Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340 (6th Cir. 2001) ...................29

*Forrester v White*, 484 U.S. 219 (1988) ............................................................. 8, 11

*Gerstein v. Pugh*, 420 U.S. 103 (1975)...................................................................38

*Hamilton v. Alabama*, 368 U.S. 52 (1961) .............................................................36

*Hernandez v. Carbone*, 567 F.Supp.2d 320 (D. Conn. 2008) .......................... 20, 25

*Heyerman v. Cnty. of Calhoun*, 680 F.3d 642 (6th Cir. 2012) ................................29

*HLV, LLC v. Van Buren Cty.*, 2019 WL 2273400 (6th Cir. May 28, 2019) ...... 8, 12

*In re City of Detroit*, 841 F.3d 684 (6th Cir. 2016) ..................................................7

*Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701 (1989) .................................................30

*John Chism Bail Bonds, Inc. v. Pennington*, 656 F.Supp.2d 929 (E.D. Ark. 2009) 12

*Johnson v. Turner*, 125 F.3d 324 (6th Cir. 1997) ........................................... *passim*

*Kaufman v. Kaye*, 466 F.3d 83 (2d Cir. 2006)........................................... 20, 24, 28

*Kelly v. Robinson*, 479 U.S. 36 (1986) ..................................................................26

*Kenny v. Bartman,* 2017 WL 3613601 (6th Cir. May 19, 2017)...........................11

*Kentucky v. Graham*, 473 U.S. 159 (1985)................................................................4

*Kevorkian v. Thompson*, 947 F. Supp. 1152 (E.D. Mich. 1997)...........................26

*King v. City of Crestwood*, 899 F.3d 643 (8th Cir. 2018).......................................33

*King v. Love,* 766 F.2d 962 (6th Cir. 1988) ...........................................................11

*King v. McCree*, 573 Fed. App'x 430 (6th Cir. 2014)...........................................11

*Kircher v. City of Ypsilanti*, 458 F.Supp.2d 439 (E.D. Mich. 2006). .....................18

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) .............................................................28

*Lazarus v. Baca*, 389 Fed. App'x 700 (9th Cir. 2010) ...........................................20

*Loch v. Watkins*, 337 F.3d 574 (6th Cir. 2003)......................................................19

*Los Angeles Cty. v. Humphries*, 562 U.S. 29 (2010)...............................................30

*Luckey v. Miller*, 976 F.2d 673 (11th Cir. 1992) .............................................. 19, 25

*Lundberg v. Buckhoe*, 389 F.2d 154 (6th Cir. 1968) ................................................37

*Mann v. Conlin*, 22 F.3d 100 (6th Cir. 1994) ............................................ 10, 11, 14

*McCormick v. Miami Univ.*, 693 F.3d 654 (6th Cir. 2012) ......................................7

*McNeil v. Wisconsin*, 501 U.S. 171 (1991).............................................................36

*Meriweather v. Burton*, 2015 WL 7450068 (6th Cir. Nov. 24, 2015)....................37

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)....28

*Mireles v. Waco*, 502 U.S. 9 (1991)................................................................. *passim*

*Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ................ 2, 30

*Moore v. Delling*, 2008 WL 4534194 (E.D. Mich. Oct. 3, 2008) ..........................12

*Mounkes v. Conklin*, 922 F. Supp. 1501 (D. Kan. 1996)...................... 20, 26, 27, 33

*Mudd v. Busse*, 437 F. Supp. 505 (N.D. Ind. 1977)................................... 20, 24, 26

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ........................................ 6, 20, 21, 25, 27

*Parker v. Turner*, 626 F.2d 1 (6th Cir. 1980) .................................................. *passim*

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987)....................................................27

*Pucci v. Nineteenth Dist. Court*, 628 F.3d 752 (6th Cir. 2010) ...............................4

*Pulliam v. Allen*, 466 U.S. 522 (1984)......................................................................9

*Rizzo v. Goode*, 423 U.S. 362 (1976)................................................................ 21, 22

*Root v. Liston*, 444 F.3d 127 (2d Cir. 2006) ..........................................................12

*Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191 (2008) ...................................... 36, 38

*Samuels v. Mackell*, 401 U.S. 66 (1971)................................................................25

*Sanchez v. Doyle*, 254 F.Supp.2d 266 (D. Conn. 2003) .........................................12

*Stump v. Sparkman*, 435 U.S. 349 (1978)........................................................ 10, 13

*Tindall v. Wayne Cty. Friend of Court, by: Schewe*, 269 F.3d 533 (6th Cir. 2001). ..................................................................................... 27, 29

*Trustees of Mich. Regional Counsel of Carpenters' Employee Benefits Fund v. H.B. Stubbs Co.*, 33 F.Supp.3d 884 (E.D. Mich. 2014)........................................7

*Turner v. United States*, 885 (6th Cir. 2018) ............................................... 36, 38, 39

*United States v. Wade*, 388 U.S. 218 (1967) ...........................................................37

*Van v. Jones*, 475 F.3d 292 (6th Cir. 2007) ......................................................... 37, 38

*Wallace v. Kern*, 520 F.2d 400 (2d Cir. 1975)..................................................... 24, 26

*Ward v. City of Norwalk*, 640 Fed. App'x 462 (6th Cir. 2016) ................... 9, 11, 17

*Watts v. Burkhart*, 854 F.2d 839 (6th Cir. 1989) ..................................................28

*Wayside Church v. Van Buren Cty.*, 847 F.3d 812 (6th Cir. 2017) .........................7

*White by Swafford v. Gerbitz,* 892 F.2d 457 (6th Cir. 1989)...................................11

*White v. Maryland*, 373 U.S. 59 (1963)..................................................................36

*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) ...............................5

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).....................................................17

*Younger v. Harris*, 401 U.S. 37 (1971)....................................................................7

## Statutes

42 U.S.C § 1983 .............................................................................. *passim*

42 U.S.C § 1988(b) ..........................................................................*passim*

MCL 600.8271 ............................................................................................31

MCL 600.8501(3) ......................................................................................31

MCL 600.8511(f) ................................................................................. 11, 32

MCL 600.8513(1) ................................................................................. 11, 14

MCL 765.6b ................................................................................................11

MCL 780.582a .............................................................................................11

**Other Authority**

1996 U.S.C.C.A.N. 4202 .............................................................................9

MCR 4.401(D) ..................................................................................... 27, 32

MCR 4.401(E) .............................................................................................11

MCR 6.006(A) .............................................................................................11

MCR 6.106(B) .............................................................................................24

MCR 6.106(F). .............................................................................................24

MCR 6.106(H)(1) ........................................................................................32

MCR 6.106(H)(2) ........................................................................................27

MCR 8.110(C) .............................................................................................31

MCR 8.110(C)(2)(f) ....................................................................................15

S. REP. 104-366 ............................................................................................9

## <u>QUESTIONS PRESENTED</u>

1.      Should this Court dismiss Plaintiffs' claims for injunctive relief and attorneys' fees where the acts alleged – making pretrial release determinations, setting bail, and supervising Magistrate Judge Defendants who issued these judicial decisions – are judicial acts as a matter of law, triggering absolute judicial immunity?

Judicial Defendants' answer:  Yes.
Plaintiffs' anticipated answer:  No.

2.      Should this Court decline to exercise jurisdiction over Plaintiffs' claims where:  (a) with respect to their claim for declaratory relief, Plaintiffs have failed to allege a viable case or controversy; and/or (b) with respect to their claims for declaratory *and* injunctive relief, *Younger* factors weigh in favor of abstention, in view of Plaintiffs' demand for an ongoing federal audit of state criminal proceedings?

Judicial Defendants' answer:  Yes.
Plaintiffs' anticipated answer:  No.

3.      Should this Court dismiss Plaintiffs' Complaint in its entirety because Judicial Defendants' judicial acts cannot, as a matter of law, establish or enforce a governmental policy under *Monell*?

Judicial Defendants' answer:  Yes.
Plaintiffs' anticipated answer:  No.

4.      Should this Court dismiss Plaintiffs' Sixth Amendment claim for representation during the arraignment process, where the Sixth Circuit has held that arraignment in Michigan is not a "critical stage" of the proceedings?

Judicial Defendants' answer:  Yes.
Plaintiffs' anticipated answer:  No.

## <u>CONTROLLING AND MOST APPROPRIATE AUTHORITY</u>

Judicial Defendants bring this Motion and request for relief pursuant to Fed. R. Civ. P. 12(b)(6), 12(b)(1) and the authorities cited in the Brief in Support of Judicial Defendants' Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1).

# I. <u>INTRODUCTION</u>

Plaintiffs in this putative class action are arrestees previously detained following criminal arraignment. "[A]ttorney court watchers" connected to the American Civil Liberties Union Foundation ("ACLU")[1] sat through arraignments in the 36th District Court days earlier (DE 1, ¶74), but rather than assisting Plaintiffs or other arrestees to obtain pretrial release or reduced bail, attorneys recruited Plaintiffs to file this putative class action seeking declaratory and injunctive relief.

Plaintiffs claim that Judicial Defendants of Michigan's 36th District Court maintain an unconstitutional bail policy that disproportionately impacts indigent criminal defendants. Recognizing that pretrial release determinations are judicial functions subject to judicial immunity, Plaintiffs sue Judicial Defendants in their purported "administrative capacities" (*id.* at ¶¶17-18) – but fail to identify any administrative function. For relief, Plaintiffs seek this Court's intrusion and interference on Michigan state-court criminal proceedings, which federalism and comity forbid. Plaintiffs also seek appointed counsel at 36th District Court arraignments allegedly based on Sixth Amendment "rights," contrary to binding Sixth Circuit precedent.

---

[1] As used herein, "ACLU" refers to both the American Civil Liberties Union Foundation and the American Civil Liberties Fund of Michigan.

This Court should dismiss Plaintiffs' Complaint against Judicial Defendants with prejudice. First, as a matter of law, setting bail and making pretrial release decisions are judicial functions subject to judicial immunity. Second, Plaintiffs' requested relief asks this Court to audit the 36th District Court's criminal proceedings, which is untenable under Supreme Court and Sixth Circuit precedent. Third, the same is true for Plaintiffs' theory under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978) – judicial acts cannot establish or execute a governmental policy for which liability attaches under §1983. Finally, Plaintiffs are not entitled to counsel under the Sixth Amendment because arraignment is not a "critical stage" of criminal proceedings in Michigan.

## II.   BACKGROUND

In this case, the ACLU alleges that the Judicial Officers of Michigan's 36th District Court maintain a *de facto* cash-bail policy that lacks individualized review procedures necessary to satisfy due process and disproportionately impacts indigent defendants. (DE 1, ¶¶1-6).  Plaintiffs were arrested between April 8 and 11, 2019, and allegedly held in jail following arraignment between April 9 and 12, 2019. (DE 1, ¶¶4, 19-44). Counsel filed Plaintiffs' Complaint and Motion for Class Certification two days after the last arraignment date, (DE 1, 2), accusing Judicial Defendants of an "unlawful and ongoing pretrial detention scheme" involving the "routine use of secured cash bail to disproportionately detain indigent individuals

arrested in the City of Detroit . . . without a hearing at which the arrestee's ability to pay is considered and without the presence of a lawyer to represent the arrestee." (DE 1, ¶5). Plaintiffs' counsel alleges that the unrepresented Plaintiffs appeared before a Magistrate Judge who conducted the arraignment quickly via videoconference, setting bail without explanation or asking whether the detainee could afford to pay it, and Plaintiffs felt discouraged from asking questions. (*Id.* at ¶¶19-44). Plaintiffs allege this is typical of 36th District Court pretrial arraignments. (*Id.* at ¶¶45-74).

Plaintiffs claim Judicial Defendants are responsible for this alleged "policy and practice." (*Id.* at ¶¶72-84). Judicial Defendants include Magistrate Judges who preside over arraignments: 1) Chief Magistrate Judge Wood; 2) Honorable Millicent D. Sherman; 3) Honorable Laura A. Echartea; 4) Honorable Dawn White; and 5) Honorable Jeffrey Kleparek (collectively "Magistrate Judge Defendants"), (*id.* at ¶17), and 6) Chief Judge Blount for her alleged role in Magistrate Judge Defendants' bail decisions. (*Id.* at ¶18). Setting pretrial release conditions is among Magistrate Judge Defendants' most significant judicial functions. MCL 600.8511(f) (authorizing district court magistrates "[t]o fix bail and accept bond in all cases"). Yet, Plaintiffs accuse Judicial Defendants of maintaining a "wealth-based pretrial detention system." (DE 1, ¶¶5, 90-95).

Plaintiffs claim the alleged "wealth-based detention system" violates: 1) the Equal Protection and Due Process Clauses (Count I); 2) substantive Due Process rights (Count II); 3) procedural Due Process rights (Count III); and 4) the Sixth Amendment (Count IV). (DE 1, ¶¶5, 150-65). Plaintiffs sue Judicial Defendants solely in official capacities. (*Id.*). Although Plaintiffs do not identify any nonjudicial function, they seek declaratory and injunctive relief against Judicial Defendants in their "administrative capacities." (*Id*. at ¶¶17-18). "In the alternative," Plaintiffs request "declaratory relief only" against Judicial Defendants in their "judicial capacities." (*Id.*).

### III.   <u>LEGAL ARGUMENT</u>

Plaintiffs' Complaint reflects a strategy which unravels under scrutiny. Key to their strategy is the capacity in which they have sued Judicial Defendants – "official administrative capacity" for declaratory and injunctive relief, and "official judicial capacity" for declaratory relief. (*Id*. at ¶¶17-18). "Official-capacity suits . . . represent only another way of pleading an action against the entity of which the officer is an agent." *Ky. v. Graham*, 473 U.S. 159, 165 (1985). Because Michigan's District Courts are an arm of the state, *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 764 (6th Cir. 2010), the "entity of which the officer is an agent" in this case is the state of Michigan. This explains Plaintiffs' choice of relief – Michigan and Michigan state-court judges are not "persons" under §1983 from whom Plaintiffs

can recover money damages. *Will v. Mich Dep't of State Police*, 491 U.S. 58, 64, 71 (1989). State officials can, however, be sued for declaratory and injunctive relief because "official-capacity actions for prospective relief are not treated as actions against the State." *Id.* at 71 fn.10.

The strategy behind the "administrative capacity" label is evident from other ACLU class actions. First, by miscasting pretrial release determinations as administrative acts, Plaintiffs attempt to avoid the bar of absolute judicial immunity that protects judges for actions taken in their judicial capacity, *see, e.g.*, *Brown v. Reinhardt*, 2019 WL 325126, *4 (4th Cir. Jan. 23, 2019),[2] and the statutory bar against injunctive relief and attorneys' fees for claims based on "act[s] or omission[s]" a state actor takes in her "judicial capacity." 42 U.S.C. §§1983, 1988(b). Second, Plaintiffs seek to demonstrate that, by issuing cash-bail orders in their purported "administrative capacities," Judicial Defendants are enforcing an unconstitutional governmental policy under *Monell*. Plaintiffs' strategy unravels in the Sixth Circuit, where pretrial release determinations are judicial acts *as a matter of law* and no factual allegations can change this reality. Because Judicial Defendants undertook those acts in their "judicial capacity," Plaintiffs' claims to injunctive relief and attorneys' fees fail. 42 U.S.C. §§1983, 1988(b).

---

[2] The unpublished opinions are attached at **Exhibit 1**.

Further, although judicial immunity does not preclude Plaintiffs' claim for a declaratory judgment, Article III of the Constitution and abstention principles do. In fact, entertaining Plaintiffs' request for declaratory or injunctive relief would require "nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger v. Harris* [] sought to prevent." *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974). Even if Plaintiffs' Complaint survives judicial immunity and the test of jurisdictional adequacy, Plaintiffs cannot demonstrate a court-wide policy or practice that violates federal Constitutional rights when the only alleged offending acts Plaintiffs identify – judicial acts – cannot establish or execute a *Monell* "policy." Lastly, Plaintiffs' Sixth Amendment claim also fails as a matter of law for additional reasons independent of judicial immunity and *Monell*. Arraignment in Michigan is not a "critical stage" of a criminal prosecution. Plaintiffs' Complaint should be dismissed in its entirety with prejudice.

### A. Standards of Review

### 1. Plaintiffs' Complaint Fails to State a Claim

Plaintiffs must plead sufficient facts that, taken as true, state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Under the plausibility standard," this Court "can first cull legal conclusions from

the complaint, leaving only the factual allegations," and then "draw on its judicial experience and common sense" to determine whether the Complaint crosses the line from "conceivable to plausible." *Tr. of Mich. Reg'l Counsel of Carpenters' Emp. Benefits Fund v. H.B. Stubbs Co.*, 33 F.Supp.3d 884, 888 (E.D. Mich. 2014) (citation omitted). Fed. R. Civ. P. 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'shown' – 'that the pleader is entitled to relief[,]'" thus justifying dismissal. *Iqbal*, 556 U.S. at 679 (citation and brackets omitted). "Dismissal is likewise appropriate where the complaint, however factually detailed, fails to state a claim as a matter of law." *In re City of Detroit*, 841 F.3d 684, 699 (6th Cir. 2016).

### 2.    This Court Lacks Jurisdiction, and, Should Abstain From Awarding Any Relief Under *Younger*

Challenges to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) "are categorized either as a facial attack or a factual attack." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012). This is a facial attack. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 817 (6th Cir. 2017). Plaintiffs' Complaint fails to allege a case or controversy to sustain their claim for declaratory relief. Even if Plaintiffs' allegations were adequate to support such a claim, considerations under *Younger v. Harris*, 401 U.S. 37 (1971), require federal court abstention.

**B.    Judicial Immunity Precludes Injunctive Relief and Attorneys' Fees**

"It is a well-entrenched principle" that judges are "generally absolutely immune from civil suits for money damages." *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Judicial immunity is wide-ranging; it is "not overcome by allegations of bad faith, or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventually trial." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). It "appl[ies] even when a party alleges that the judge acted maliciously or violated its constitutional rights." *HLV, LLC v. Van Buren Cty.*, 2019 WL 2273400, *4 (6th Cir. May 28, 2019). This broad protection is not for the benefit of the judge, but for the public, who has an interest in the judiciary remaining "at liberty to exercise their functions with independence and without fear of consequences." *Bright v. Gallia Cty.*, 753 F.3d 639, 649 (6th Cir. 2014) (citation omitted). "Judicial immunity is indispensable to our legal system." *HLV*, 2019 WL 2273400 at *5. "If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentive[] . . . to avoid rendering decisions likely to provoke such suits." *Forrester v. White*, 484 U.S. 219, 226-27 (1988). "The resulting timidity would . . . manifestly detract from independent and impartial adjudication." *Id.* at 227.

Plaintiffs have not sought money damages, but injunctive and declaratory relief along with attorneys' fees. While historically, "judicial immunity [was] not a

bar to prospective relief against a judicial officer acting in her judicial capacity,"[3] Congress changed that by amending §1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable." 42 U.S.C. §1983.[4] Congress believed the same concerns associated with suits seeking damages – that judges would be forced "to defend themselves against frivolous cases," and that such "burdensome litigation . . . threatens judicial independence" – are also at play when claimants demand equitable relief. S. REP. 104-366, 37; 1996 U.S.C.C.A.N. 4202, 4217.

"[B]ecause the plain language of §1983 [now] allows suits for injunctions only after a litigant has sought a declaratory judgment," and Plaintiffs have not previously asserted a declaratory judgment action against Judicial Defendants, this Court should dismiss Plaintiffs' injunctive relief claim against Judicial Defendants because pretrial release determinations are judicial functions. *Ward v. City of Norwalk*, 640 Fed. App'x 462 (6th Cir. 2016). Further, the Court should dismiss Plaintiffs' claim for attorneys' fees because judicial officers cannot be held liable "for any costs, including attorneys' fees" for acts or omissions "taken in such

---

[3] *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984).
[4] Congress' amendment overruled *Pulliam*. *Allen v. DeBello*, 861 F.3d 433, 439 (3d Cir. 2017).

officer's judicial capacity," "unless such action was clearly in excess" of jurisdiction. 42 U.S.C. §1988(b).[5]

### 1. Magistrate Judge Defendants are Judicially Immune From Plaintiffs' Claims for Injunctive Relief and Attorneys' Fees

A claimant can rebut judicial immunity in *only* two circumstances: 1) for "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity;" or 2) for actions "in the complete absence of jurisdiction." *Mireles*, 502 U.S. at 11-12. Whether an act is "judicial" turns on a functional analysis of "whether the actions are truly judicial acts or 'acts that simply happen to have been done by judges.'" *Mann v. Conlin*, 22 F.3d 100, 103-04 (6th Cir. 1994) (citation omitted). The Court must "examine the 'nature' and the 'function' of the act, not the 'act' itself." *Mireles*, 502 U.S. at 13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). "Even if a particular act is not a function normally performed by a judge, [the Court is] directed to 'look to the particular act's relation to a general function normally performed by a judge.'" *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997) (citations and brackets omitted). Also relevant is the role of the judge as it "relate[s] to . . . the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Mireles*, 502 U.S. at 12. The most "[p]aradigmatic judicial acts" are those

---

[5] Plaintiffs do not allege that Judicial Defendants acted in excess of their jurisdiction, but rather that Judicial Defendants' pretrial release determinations are "administrative" (nonjudicial).

that "involve [a judge's] resolution of disputes 'between parties who have invoked the jurisdiction of the court.'" *Mann*, 22 F.3d at 104 (citation omitted).

Setting bail and issuing pretrial release determinations are "judicial" acts.[6] State law authorizes district court magistrates to render pretrial release decisions. MCL 600.8511(f) (district court magistrates may "fix bail and accept bond in all cases"); MCL 600.8513(1) ("[w]hen authorized by the chief judge . . . a district court magistrate may conduct the first appearance of a defendant"); MCL 765.6b; MCL 780.582a. Plaintiffs "dealt with the judge[s] in [their] judicial capacit[ies]," *Mireles*, 502 U.S. at 12, appearing before Magistrate Judge Defendants via videoconference[7] for on-the-record proceedings in which they issued "orders affect[ing] the rights only of the individual plaintiffs in specific judicial proceedings" – the very "paradigmatic judicial acts" for which immunity is intended. *Mann*, 22 F.3d at 104; *King v. McCree*, 573 Fed. App'x 430, 439-40 (6th Cir. 2014) (judge's acts were "judicial" where he "presid[ed]" over the case, his "interactions [with plaintiff] occurred in a

---

[6] *King v. Love*, 766 F.2d 962, 968 (6th Cir. 1988) (judge performed "judicial act in ordering that there be no bond . . . on the arrest warrant"); *White by Swafford v. Gerbitz*, 892 F.2d 457, 464 (6th Cir. 1989) ("setting bail is a quasi-judicial function" when performed by a court clerk); *Dye v. Hofbauer*, 197 Fed. App'x 378, 387 (6th Cir. 2006) ("[t]he authority to grant and revoke bail is, of course, an inherent judicial function"); *Kenny v. Bartman*, 2017 WL 3613601, *2 (6th Cir. May 19, 2017) (affirming dismissal where magistrate's decision to deny bail was "well within the scope" of his judicial capacity); *Ward*, 640 Fed. App'x at 465 (judge who jailed putative class action plaintiffs "for failing to pay court costs" was a judicial act subject to immunity).

[7] *See* MCR 4.401(E); MCR 6.006(A) (permitting arraignment by videoconference).

11

court room," the proceedings were "on the record" and "notated on the docket sheet"). Unsurprisingly, the Eastern District of Michigan has held that the act of "setting [a complainant's] bail" "falls squarely in the realm of [a jurist's] judicial duties and is not subject to either exception for judicial immunity." *Moore v. Delling*, 2008 WL 4534194, *4 (E.D. Mich. Oct. 3, 2008). So have many other courts.[8]

Plaintiffs' claim that Magistrate Judge Defendants' pretrial release determinations are unconstitutional does not render them any less "judicial." Allegations that "the judge . . . violated [a party's] constitutional rights" do not avoid immunity. *HLV*, 2019 WL 2273400 at *4. In *Mireles*, a judge ordered court officers "to forcibly and with excessive force seize and bring plaintiff into his courtroom." 502 U.S. at 11. The Supreme Court acknowledged that "a judge's direction to police officers to carry out a judicial order with excessive force is not a 'function normally performed by a judge,'" even if issuing an order to bring an individual before the court ordinarily is. *Id.* at 12. "But if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a 'nonjudicial' act, because an improper or erroneous act cannot be said to be normally

---

[8]   *See, e.g., Root v. Liston*, 444 F.3d 127, 132 (2d Cir. 2006) ("[o]rdinarily, it is judges who set bail . . . and judges enjoy absolute immunity when they do so"); *Sanchez v. Doyle*, 254 F.Supp.2d 266 (D. Conn. 2003) (police officer authorized to set bond for arrestees enjoys absolute immunity); *John Chism Bail Bonds, Inc. v. Pennington*, 656 F.Supp.2d 929, 933 (E.D. Ark. 2009) ("[d]etermining bonds for criminal defendants is a judicial act").

performed by a judge." *Id.* Judicial immunity "means that a judge 'will not be deprived of immunity because the action he took was in error or was in excess of his authority.'" *Id.* at 12-13 (citation omitted). Such is the meaning of looking to the "nature" and the "function" of the act, "not the 'act itself.'" *Id.* (citations omitted); *see also Forrester*, 484 U.S. at 227 (judicial acts "do[] not become less judicial by virtue of allegation of malice or corruption of motive"). "A judge will not be deprived of immunity because the action he took was in error." *Stump*, 435 U.S. at 356.

The nature and function of setting bail is inherently judicial, whether done erroneously or not. Plaintiffs' exclusive focus on the "particular act[s] in question," such as whether Plaintiffs were asked about income during arraignments, or given an opportunity to ask questions, is misplaced. *Mireles*, 502 U.S. at 12-13. "[T]he *function* of [the judge's] conduct must be the primary consideration – not the conduct itself." *Cooper v. Rapp*, 702 Fed. App'x 328, 332 (6th Cir. 2017). Because Magistrate Judge Defendants' pretrial release determinations are judicial acts taken in their "judicial capacity," they are immune from Plaintiffs' suit as to injunctive relief and attorneys' fees. 42 U.S.C. §§1983, 1988(b). This Court should dismiss Plaintiffs' claims for injunctive relief and attorneys' fees against Magistrate Judge Defendants on all Counts.

13

### 2. Chief Judge Blount is Judicially Immune From Plaintiffs' Claims for Injunctive Relief and Attorneys' Fees

Plaintiffs seek injunctive and declaratory relief against Chief Judge Blount in her "official administrative capacity." (DE 1, ¶18). Chief Judge Blount is alleged to be "responsible generally for the administration of the 36th District Court" as a "supervisory official with the authority to alter the policies and practices of the Magistrate Judge Defendants at arraignments." (*Id.*). Judicial immunity is admittedly curtailed in the context of employee supervision. Hiring, demotion and discharge of a court's employees are prototypical examples of "acts that simply happen to have been done by judges." *Mann*, 22 F.3d at 104.

Plaintiffs' theory is that Chief Judge Blount oversaw, or acquiesced to, a "policy and practice" of "routinely send[ing] indigent arrestees to jail without providing them an opportunity for a bail hearing at which their indigency will even be mentioned" (DE 1, ¶¶106, 1-5, 72-73, 103), and conducting arraignments in a manner purportedly incompatible with MCR 6.106. (*Id.* at ¶¶90-95, 97). Overseeing arraignments, however, is not among the ordinary tasks of an employer supervisor – that is, it is not an "act[] that simply happen[s] to have been done by judges." *Mann*, 22 F.3d at 104. It is an act that can *only* be done by Chief Judge Blount because it requires her to assess legal standards. *See* MCL 600.8513(1) (district court magistrate conducts the first appearance of a criminal defendant "[w]hen authorized

by the chief judge.") Chief Judge Blount is empowered to "counsel and assist other judges in the performance of their responsibilities," because she, as a judge, has the specialized legal knowledge necessary to do so. MCR 8.110(C)(2)(f). Such acts are judicial, not administrative.

Similarly, in *Coleman v. Gov. of Michigan*, 413 Fed. App'x 866 (6th Cir. 2011) (per curiam), indigent prisoners sued a group of judges for enforcing MCL 600.2963, which required prisoners to pay court fees prior to filing suit, challenging the constitutionality of an administrative order entered by Ingham County Circuit Court Judge Houk, "which directs the court to apply §600.2963(8) to all pleadings brought by inmates[.]" *Id.* at 868-71. The Sixth Circuit held that this order – which applied "routinely," not simply as part of "individual adjudications," and denied the prisoners any means "by which their ability to pay is considered or assessed" (DE 1, ¶97) – "qualifie[d] as a judicial action performed in Judge Houk's official judicial capacity" because "[t]he order interpret[ed] §600.2963(8) and advise[d] arms of the judges, including their clerks, to execute their statutory interpretation." *Id.* at 873.

The same is true for Chief Judge Blount's alleged "formulat[ion]" or "aware[ness]" of the claimed arraignment "policies" in this case. (DE 1, ¶103). Taking Plaintiffs' allegations as true, the 36th District Court's arraignment practices reflect Chief Judge Blount's judicial "interpret[ation]" of the Court Rules and Constitution, and she has allegedly "advise[d]" other employees, including

Magistrate Judge Defendants, "to execute" that interpretation. *Coleman*, 413 Fed. App'x at 873; *Collins v. Daniels*, 916 F.3d 1302, 1316-17 (11th Cir. 2019) (holding "chief judges and court executive officers" judicially immune for "the judicial act of implementing" state-constitutional bail rules and using risk assessment to set bail).

Plaintiffs' claims are based exclusively on what they allege is Chief Judge Blount's interpretation of the law and proper legal procedures applicable at arraignment. Because Chief Judge Blount's "formulat[ion]" or "aware[ness]" (DE 1, ¶103) of the alleged arraignment policies are acts within her "judicial capacity," she is immune from Plaintiffs' suit insofar as it seeks injunctive relief and attorneys' fees. 42 U.S.C. §§1983, 1988(b). Thus, this Court should dismiss Plaintiffs' claims for injunctive relief and attorneys' fees against Chief Judge Blount on all Counts.[9]

## C. This Court Lacks Jurisdiction, and, Should Abstain From Issuing Any Relief Under *Younger*

"In the alternative" to their "official administrative capacity" claims, Plaintiffs seek declaratory relief against all Judicial Defendants in their official, "judicial capacity." (DE 1, ¶¶17-18). The Declaratory Judgment Act is "an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant."

---

[9] Plaintiffs' conclusory allegation that Chief Magistrate Judge Wood has "partial responsibility" for overseeing other Magistrate Judges and reviewing performance (*see* DE 1, ¶17) also fails to the extent Plaintiffs attempt to make a similar claim against her. *See, e.g., infra*, fn. 12; *Iqbal*, 556 U.S. at 678 (a complaint requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citation omitted). "When all is said and done . . . 'the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.'" *Id.* (citation omitted). Declaratory relief may, in some cases, be available against state courts in a §1983 action, this "does not mean that such relief will be appropriate in every case." *Ward*, 640 Fed. App'x at 468. "Limits on the judicial power of federal courts stemming from accepted abstention doctrines," and "Article III's case-or-controversy requirement," can still foreclose relief, as they do here. *Id.*

### 1. Plaintiffs' Claim for Declaratory Relief Lacks the Requisite Case or Controversy

Regarding the case-or-controversy requirement, this Court in *Chaplin v. Anderson*, 2019 WL 1219412, at *4 (E.D. Mich. Mar. 15, 2019), dismissed a claim for declaratory relief against a Michigan court judge who presided over the plaintiff's divorce proceedings, holding that judges who act as "disinterested judicial adjudicator[s]" are simply not "amenable to suit under §1983." This Court held:

> Article III's case-or-controversy requirement "operates to ensure that declaratory relief is available only when a live controversy continues to exist." *Ward*, 640 F. App'x at 468. And judges who are not adversaries in the state-court proceedings, but rather acted as a "disinterested judicial adjudicator, bound to decide the issues before him according to the law," (and not "as the enforcer or administrator" of a statute), are not amenable to a suit for declaratory relief under §1983. *Cooper*, 702 Fed. App'x at 333-34. [The judge] was the "disinterested judicial adjudicator" and not an adversary in the state-court proceedings. So no

17

case or controversy exists to permit a claim for declaratory judgment.
[*Id.*].

Magistrate Judge Defendants are "disinterested judicial adjudicators" when setting bail and rendering pretrial release determinations, so no case or controversy exists, thus dismissal is appropriate on Plaintiffs' declaratory relief claims against Magistrate Judge Defendants on all Counts. *Id.*

### 2.   Federalism Warrants Abstention

Even if this Court had jurisdiction (or, for that matter, that judicial immunity does not preclude Plaintiffs' claim for an injunction), *Younger* considerations favor abstention. *Younger* limits federal courts' ability to enjoin or otherwise interfere with state judicial proceedings. This doctrine is borne from a "proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." 401 U.S. at 44. "*Younger* abstention applies . . . in federal declaratory judgment actions because they involve 'precisely the same interference with and disruption of state proceedings' as an injunction." *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074 (6th Cir. 1998). The Court "may not reach the merits of the federal suit, but must stay or dismiss the action pending the final outcome of the [state] proceedings." *Kircher v. City of Ypsilanti*, 458 F.Supp.2d 439, 450 (E.D. Mich. 2006).

Under *Younger*, a federal court should abstain when: 1) the underlying action constitutes an ongoing state judicial proceeding; 2) the proceeding implicates important state interests; and 3) there is an adequate opportunity to raise constitutional challenges in the underlying proceeding. *Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003). If these conditions are met, the court should abstain unless a showing of bad faith, harassment, or another extraordinary circumstance makes abstention inappropriate. *Am. Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 332 (6th Cir. 2007). No such circumstance applies here.

### i.    Granting Declaratory Relief Will Interfere With Ongoing Criminal Proceedings

Based on the Complaint, the underlying proceedings and the alleged "pre-trial detention scheme" are ongoing. (DE 1, ¶¶5, 98-102). Further, Plaintiffs' proposed class is ever expanding, including "all pretrial detainees whose bail is set at arraignment in the 36th District court and who, as a result" of the alleged "policies and practices" "face detention because they are unable to pay imposed secured cash bail conditions." (*Id*. at ¶132). Every person arraigned in the 36th District Court who claims he cannot pay or afford bail is a member of Plaintiffs' putative class. A "decree of the sort requested by the Plaintiffs would, inevitably, interfere with every state criminal proceeding" in the 36th District Court. *Luckey v. Miller*, 976 F.2d 673 (11th Cir. 1992) (abstaining because a federal court order reforming the state's indigent defense system would interfere with criminal prosecutions).

19

Even if the criminal proceedings are not ongoing for named Plaintiffs, "*Younger* and its principles of comity and federalism" still "bar relief solely because of possible undue interference with the conduct of state proceedings." *Parker v. Turner*, 626 F.2d 1, 4-8 (6th Cir. 1980). "[U]nder the principle known as comity a federal district court has no power to intervene in the internal procedures of the state courts," nor can it "legislate and engraft new procedures upon existing state criminal procedures." *Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006) (citations omitted). "Such interference with the state criminal process in both pending and future bail proceedings would violate" the principles of federalism "set forth in *Younger*." *Id.*

Federal courts regularly abstain under *Younger* where criminal defendants assert constitutional challenges to state-court bail determination.[10] These decisions are informed by *O'Shea v. Littleton*, 414 U.S. 488, 492 (1974), a class action seeking

---

[10] *See, e.g.*, *Hernandez v. Carbone*, 567 F.Supp.2d 320, 331-32 (D. Conn. 2008) (abstaining and dismissing claims alleging that "Connecticut's bail system violates the Constitution because it gives judges the discretion to impose money bail . . . even when a defendant is indigent and cannot possibly post bail or bond"); *Mounkes v. Conklin*, 922 F. Supp. 1501, 1510-13 (D. Kan. 1996) (abstaining where plaintiffs alleged that the bail system "deprive[d] them of constitutional rights or procedural and substantive due process, equal protection . . . and freedom from excessive bail"); *Mudd v. Busse*, 437 F. Supp. 505, 509-17 (N.D. Ind. 1977) (suit alleging "bail system as implemented by the defendant constitutes . . . discrimination against indigent accused persons in the plaintiff class in violation of the equal protection clause" foreclosed by *Younger*); *Lazarus v. Baca*, 389 Fed. App'x 700 (9th Cir. 2010) (affirming dismissal of claim that being held on excessive bail awaiting trial violated petitioner's constitutional rights because it "threaten[ed] to interfere with state criminal proceedings in a manner that *Younger* disapproves").

to enjoin a municipal court system's alleged discriminatory bail and sentencing "practices" against African American and indigent defendants by requiring the judicial defendants to change the way they "set bond in criminal cases," "set sentences," and fine offenders. Although the *O'Shea* Court found that plaintiffs' complaint failed to allege a case or controversy, it held that even if a case or controversy existed, *Younger* would persuade the federal court to abstain. "What [plaintiffs sought was] an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials[,]" requiring "nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger* . . . sought to prevent." *Id.* at 500, 492.

    *O'Shea* is best understood in conjunction with *Rizzo v. Goode*, 423 U.S. 362 (1976), a §1983 class action alleging a pattern of discriminatory mistreatment by police officers against minority Philadelphia residents. The Supreme Court vacated the injunction requiring city officials to develop a "comprehensive program" for addressing civilian complaints, reasoning that state and local governments "ha[ve] traditionally been granted the widest latitude in the 'dispatch of [their] own internal affairs[,]'" and that an injunction "significantly revising the internal procedures of the Philadelphia police department, was indisputably a sharp limitation" on that latitude. *Id.* at 365, 378-79. "[F]ederal courts must be constantly mindful of the

'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" *Id.* at 378. Even when "the prayer for injunctive relief does not seek to enjoin state criminal proceedings themselves," an injunction permitting "a major continuing intrusion of the equitable power of federal courts into the daily conduct of state criminal proceedings" is impermissible under *Younger*. *Id.* at 379-80 (quoting *O'Shea*, 414 U.S. at 502).

As the Sixth Circuit held in *Parker*,

[c]ases such as *Rizzo* reiterate the classic rule that federal courts should interfere with state proceedings of any kind *only* when called for. ***Younger* established a near-absolute restraint rule when there are pending state criminal proceedings. *O'Shea*, in effect, extends this near-absolute restraint rule to situations where the relief sought would interfere with the day-to-day conduct of state trials**.

626 F.2d at 8 (emphasis added). In *Parker*, the Sixth Circuit affirmed dismissal of a class action by indigent fathers accusing Tennessee "juvenile court judges" of "routinely den[ying] basic due process rights in civil contempt proceedings," including denying them "the right to counsel," and the opportunity to prove their indigency. *Id.* at 2. Claimants "sought declaratory and injunctive relief to ensure that the juvenile court followed basic due process," including a declaration to appoint the indigent fathers counsel. *Id.* The Sixth Circuit deemed "*O'Shea* controlling," and affirmed the district court's abstention under *Younger* because the relief sought "would necessarily require monitoring the manner in which the state juvenile judges conducted contempt hearings." *Id.* at 8.

22

Plaintiffs demand the same kind of intrusive injunction that "would necessarily require" this Court to "monitor[] the manner in which" "[arraignment] hearings" are conducted. *Id.* Plaintiffs request "[a] permanent injunction prohibiting the [Judicial Defendants] from maintaining the Arraignment Policies and Practices" alleged, and seek arraignments on the following terms "promptly after arrest:"

> Advance written notice to the arrestee of the factors to be considered in setting bail, and in particular notice that evidence of indigency is relevant to the setting of secured cash bail conditions;

> A meaningful, individualized inquiry into the ability to pay;

> Appointment and presence of counsel for the hearing of any arrestee who cannot afford to retain counsel;

> If the court is considering setting unaffordable bail as a result of evidence that the arrestee presents an unmanageable flight risk or an identifiable and articulable danger to the community, the arrestee must have notice of the evidence in question and an opportunity to testify, present her own evidence, and rebut the evidence against her;

> Reasoned written findings, on the record, of the arrestee's ability to pay; and

> If unaffordable secured cash bail is to be imposed, reasoned written findings must be made, on the record and by clear and convincing evidence, that detention is necessary because there is no other less restrictive means (or combination of means) of mitigating the arrestee's unmanageable risk of flight or an identifiable and articulable danger to an individual or the community.

(DE 1, "Relief Requested," ¶¶4(a)-4(f)). Were this Court to grant such injunctive relief, "[t]he federal interference with state proceedings would be as serious here as it was feared to be in *O'Shea*." *Parker*, 626 F.2d at 8. A federal court order granting

23

such relief would necessarily "legislate and engraft new procedures upon existing state criminal practices" that go well beyond current requirements. *Wallace v. Kern*, 520 F.2d 400, 404 (2d Cir. 1975).

For example, Michigan Court Rules do not require "advanced written notice" to arrestees regarding the factors considered as part of pretrial detention – those factors are enumerated in MCR 6.106(B) and (F). "Such interference with the state criminal process in both pending and future bail proceedings would violate the principles of comity set forth in *Younger*." *Kaufman*, 466 F.3d at 86. Moreover, "[e]very decision to set bail would involve an arguable violation of the court's order," such that "[m]embers of the [putative] plaintiff class would inundate [this] [C]ourt with complaints that the method of release was not the least restrictive under the circumstances and would in effect transform" this Court "into an appellate court reviewing [the 36th District Court's] bail setting decisions." *Mudd*, 437 F. Supp. at 512-13. "[A]ny state court litigant dissatisfied" with his bail determination "could raise compliance issues under the putative federal injunction claiming that the state court's chosen remedy violated the Constitution on the terms of that injunction." *Kaufman*, 466 F.3d at 87. This "would inevitably lead to precisely the kind of 'piecemeal interruptions of state proceedings' condemned in *O'Shea*." *Id.*

Those interruptions carry a related concern: if "the beneficiaries of the injunction" i.e., Plaintiffs, "were to charge that [the injunction] had been disobeyed,"

24

what is their remedy? *O'Shea*, 414 U.S. at 501. "Presumably any member of [the putative] class who appeared as an accused before [Magistrate Judge Defendants] could allege and have adjudicated [in this federal Court] a claim that [Judicial Defendants] were in contempt of the federal court's injunction order, with review of adverse decisions in the Court of Appeals and, perhaps, in [the Supreme] Court." *Id.* at 501-02. More bluntly, "[i]f a state court judge does not obey a district court's injunction," is this Court "willing to jail the state court judge for contempt? Avoidance of this unseemly conflict between state and federal judges is one reason for *O'Shea* and *Younger*." *Luckey,* 976 F.2d at 678 (citation omitted).

"[T]he relief [Plaintiffs] seek – forbidding state courts to impose money bail … whenever the defendant is indigent and monitoring the state courts to ensure that [indigent persons] are not disfavored in the setting of bail – would intrude substantially into pending and future criminal cases" in the 36th District Court. *Hernandez*, 567 F.Supp.2d at 333. Nor may this Court avoid these "unseemly" conflicts by granting exclusively declaratory relief. *Luckey,* 976 F.2d at 678. Even a "limited decree[]" "would inevitably set up the basis for the future intervention" cautioned against "in *O'Shea*." *Id.* at 679; *Samuels v. Mackell*, 401 U.S. 66, 72 (1971) ("a declaratory judgment issued while state proceedings are pending might serve as the basis for a subsequent injunction against those proceedings," "and thus result in a clearly improper interference with the state proceedings"). This "federal

court cannot grant relief regarding unconstitutional practices which occur at a state trial." *Parker*, 626 F.2d at 10. Because Plaintiffs are seeking relief based on alleged unconstitutional practices in state criminal proceedings, *Younger*'s first element is satisfied, whether or not the proceedings against named Plaintiffs are "ongoing."

### ii.    Michigan has a Profound Interest in Protecting the Community and Ensuring Criminal Defendants' Appearance For Trial

*Younger*'s second element is also met because Michigan has "a paramount state interest" in controlling its criminal procedures. *Kevorkian v. Thompson*, 947 F. Supp. 1152, 1163 (E.D. Mich. 1997). "[T]he States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *Kelly v. Robinson*, 479 U.S. 36, 49 (1986). Courts have recognized that each state "has an important interest in bail bond rules and process." *Mounkes*, 922 F. Supp. at 512. "The assurance that a defendant who has been indicted for a crime be present and stand [for] his state trial and be sentenced if convicted is patently of prime concern to the state." *Wallace*, 520 F.2d at 405. "Such an interest is more than enough to trigger the principles of comity and federalism" that inform *Younger*, and "[t]he State's interest is not any less simply because a defect in setting the bail bond is not a defense to the actual criminal prosecution." *Mounkes*, 922 F. Supp. at 1512. "Our Federalism" functions best with "a proper respect for a state's sovereign ability

26

to have its own courts determine its own law." *Carroll*, 139 F.3d at 1075. Plaintiffs'

Complaint asks this Court to disregard this fundamental principle. "If a federal court

were to intervene" in this case, it "would cast a critical shadow over the state

judiciary's ability to deal fully and fairly with an accused's right to bail." *Mounkes*,

922 F. Supp. at 1513. Accordingly, "[t]he second requirement for *Younger*

abstention is satisfied." *Id.*

### iii.   Plaintiffs Have An Opportunity to Raise Challenges to Bail in the 36th District Court

Plaintiffs must establish that 36th District Court proceedings do not provide

an adequate remedy for their federal claims. *Tindall v. Wayne Cty. Friend of Court,*

*by: Schewe*, 269 F.3d 533, 540 (6th Cir. 2001). "[W]hen a litigant has not attempted

to present his federal claims in related state-court proceedings, a federal court should

assume that state procedures will afford an adequate remedy, in the absence of

unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15

(1987). There is no such authority. And Plaintiffs have at least three avenues to

challenge the 36th District Court's alleged bail practices: 1) seek modification of a

pretrial release decision (MCR 6.106(H)(2)); 2) appeal their bail determinations

(MCR 6.106(H)(1) *and* MCR 4.401(D)); or 3) seek federal habeas corpus relief. *See*

*O'Shea*, 414 U.S. at 502. The fact that these procedures must be undertaken

individually does not render them inadequate. Even in *Parker*, "[t]he proper remedy

[was] appeal and/or habeas corpus in individual cases." 626 F.2d at 10. For

*Younger*'s third prong, this Court "need only ask 'whether the state's procedures *could* provide the relief sought and not whether the state *will* provide the constitutional ruling which the plaintiff seeks." *Kaufman*, 466 F.3d at 87 (citation omitted).[11] In this instance, the state's procedures can. "Minimal respect for the state process of course precludes any *presumption*" to the contrary. *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).

Federal court is not a means to "short circuit" state proceedings. *Kowalski v. Tesmer*, 543 U.S. 125 (2004) (case involving the ACLU). "If an attorney is all that the indigents need to perfect their challenge in state court . . . one wonders why the attorneys asserting this §1983 action did not attend state court and assist them." *Id.* at 132. The only "fair inference" was that "the attorneys and the … indigent plaintiffs. . . did not want … the state process to take its course," "they wanted a federal court to short circuit the State's adjudication of this constitutional question." *Id.* at 132-33. The Court should reject Plaintiffs' same strategy here.

"[T]he Supreme Court has decreed that constitutional violations in state trial settings must first be handled within the state system." *Parker*, 626 F.2d at 10. "*Where there exists the possibility of raising and correcting constitutional claims in state courts,*" "*a criminal defendant must first exhaust his state appellate remedies*

---

[11] *Accord Watts v. Burkhart*, 854 F.2d 839, 848 (6th Cir. 1989) (administrative hearing provided adequate remedy for plaintiff to present his claims despite record evidence that plaintiff's constitutional defenses were stricken).

*before seeking relief in the District Court.*" *Tindall*, 269 F.3d at 540 (citation omitted). "That is the effective command of *O'Shea* and we must follow it." *Parker*, 626 F.2d at 10. Because Plaintiffs have not alleged an inability to raise their constitutional arguments in state court, but merely a preference to raise the arguments in federal court, *Younger*'s third prong is satisfied. This Court should abstain from, and dismiss, Plaintiffs' claims for declaratory and injunctive relief under *Younger*.

### D.   Plaintiffs Fail to State a Claim Under *Monell*

Plaintiffs bring their constitutional claims pursuant to 42 U.S.C. §1983. "Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). To state a §1983 claim, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012).

"Under §1983, local governments are responsible only for their own illegal acts. They are not vicariously liable under §1983 for their employees' actions." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (citation omitted). Liability attaches only to government officers "whose [unlawful] decisions represent the official policy of the local governmental unit." *Jett v. Dall. Indep. Sch. Dist.*, 491

U.S. 701, 737 (1989). The challenged conduct must occur pursuant to the entity's "'official policy,' such that the [entity's] promulgation or adoption of the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights." *D'Ambrosio*, 747 F.3d at 386 (quoting *Monell*, 436 U.S. at 692). This "'policy or custom' requirement applies in §1983 cases irrespective of whether the relief sought is monetary or prospective." *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 39 (2010). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A plaintiff may invoke a custom, policy, or practice sufficient to state a claim under *Monell* by alleging: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *D'Ambrosio*, 747 F.3d at 386 (citation omitted).

### 1.    Chief Judge Blount's Judicial Acts Are Not "Policy"

Plaintiffs name Chief Judge Blount as the "policymaker" who "authorizes" Magistrate Judge Defendants to preside over arraignments and who "has the authority to instruct the Magistrate Judge Defendants to conduct the arraignments in a different manner such that arrestees' indigency would properly be considered

under constitutional standards." (DE 1, ¶103). "Whether an official had final policymaking authority is a question of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Chief Judge Blount is empowered under state law to supervise and manage court employees, MCL 600.8271; MCL 600.8501(3), and court business. MCR 8.110(C).[12] However, this does not transform her judicial acts into policymaking acts, nor does it transform the judicial acts of Magistrate Judge Defendants (i.e., bail determinations) into acts of policy expression.

Judicial decisions are not "'policies' . . . for which liability could attach under *Monell*." *Johnson*, 125 F.3d at 335-36. In *Johnson,* plaintiffs challenged a juvenile court judge's acts under then applicable paternity laws "authoriz[ing] arrests in purely civil matters without a showing of effective service of process and a finding of probable cause[.]" *Id.* at 328-29. Plaintiffs alleged the judge was an official with policymaking authority for the county based on a standing memorandum he authored on the "attachment *pro corpus*" procedure for persons who failed to appear in response to a child-support summons, and his judicial decisions. The Sixth Circuit disagreed on both counts:

> The district court properly concluded that [the judge's] memorandum
> that discusses the initiation of the attachment *pro corpus* is not a

---

[12]   Chief Magistrate Judge Wood is not. Thus, insofar as Plaintiffs' claims turn on her alleged status as a policymaker (DE 1, ¶17), they fail as a matter of law. *Praprotnik*, 485 U.S. at 126 ("a federal court would not be justified in assuming that . . . policymaking authority lies somewhere other than where the applicable law purports to put it").

> "policy" . . . but rather a general restatement of state law as perceived by the juvenile court judge. Further, the alleged unconstitutional actions taken by the juvenile court judge are not "policies" of the county for which liability could attach under *Monell*, 436 U.S. at 694-95, but are judicial decisions reviewable on appeal to the Tennessee appellate courts. [*Id.* at 335-36].

Likewise, Chief Judge Blount's supervisory role as alleged is not one of an administrator, but of "judicial capacity" which requires an expression of her view of the law. Under *Johnson*, a "general restatement of the law as perceived by the . . . judge" is not a *Monell*-style policy. *Id.*

## 2. Magistrate Judge Defendants' Judicial Decisions Are Not Expressions of "Policy"

Even if Chief Judge Blount acted in an administrative capacity overseeing Magistrate Judge Defendants, their pretrial release determinations cannot constitute "policy" expression as a matter of law. Like in *Johnson*, the bail and release determinations are "judicial decisions reviewable on appeal" to a higher court. MCR 6.106(H)(1) ("[a] party seeking review of a release decision may file a motion in the court having appellate jurisdiction over the court that made the release decision"). Every decision a magistrate judge makes is appealable to the district court judge as of right. MCR 4.401(D). *See Praprotnik*, 485 U.S. at 127 ("[t]he authority to make municipal policy is necessarily the authority to make *final* policy"). The "functions" of Magistrate Judge Defendants' pretrial release decisions are established by state law. MCL 600.8511(f) (district court magistrates may fix bail). Thus, like in

32

*Johnson*, they are not "policies . . . for which liability could attach under *Monell*." *Johnson*, 125 F.3d at 335-36; *accord King v. City of Crestwood*, 899 F.3d 643, 646 (8th Cir. 2018) ("a municipal judge's 'judicial decision made in a case that came before him on a docket' is 'not a final policy decision made of a type creating municipal liability under §1983") (citations omitted)).

"That the plaintiffs see some pattern or routine in the state court decision does not elevate the separate bail bond decisions into a promulgated rule or policy. Each of the state decisions in that alleged pattern . . . was the result of a separate bail bond proceeding that adjudicated each accused individual's circumstances." *Mounkes*, 922 F. Supp. at 1510. "[T]hat a judge's orders follow a certain pattern does not automatically convert those orders into 'rules.'" *Mann*, 22 F.3d at 105. Plaintiffs' claim "rests on the erroneous premise that the decision[s] rendered by the presiding judge at [their] criminal [arraignments] constituted policymaking." *El-Amin v. Downs*, 272 F.Supp.3d 147, 152 (D. D.C. 2017). They do not.

Moreover, that these decisions are, according to Plaintiffs, erroneous or unconstitutional does not change their essential character. For example, in *Eggar v. City of Livingston*, 40 F.3d 312, 313-15 (9th Cir. 1994), the Ninth Circuit dismissed a class action alleging a "policy of imprisoning indigent defendants without offering appointed counsel and without securing an effective waiver of the right to counsel" based on an "unwritten policy of refusing to provide counsel to indigents," the

"jailing of 229 persons without counsel," and the judge's failure to advise indigent

defendants of their rights.

> That [the Judge] allegedly performed his duty to advise indigents of their rights in a way that makes a mockery of those rights does not make that duty administrative. The Judge's failure to follow state law or federal constitutional law does not transform his "cattle-call" method of counseling into municipal policymaking. As state law makes clear, the Judge's obligation to address the rights of defendants arises from his membership in the state judiciary. It is lamentable, but irrelevant, that he failed miserably to meet this obligation under both state and federal standards: he simply is not a municipal decision maker in this context. [*Id.* at 315-16].

Whether Magistrate Judge Defendants' pretrial release determinations fail to comply

with what Plaintiffs contend are proper Constitutional standards is "irrelevant"

because their bail determinations are not "policies" under *Monell*.

### 3.    Plaintiffs Fail to Allege a 36th District Court "Policy" That is the "Moving Force" Behind Claimed Injuries

Plaintiffs' inability to cast Magistrate Judge Defendants' pretrial release

determinations as proof of a court-wide policy is fatal to their claims. *Monell*

requires the unlawful policy to be "the moving force" behind the "deprivation, such

that the constitutional injury was directly caused by the conduct of the [entity] rather

than simply by the conduct of the [entity's] employee." *D'Ambrosio*, 747 F.3d at

388. This means the 36th District Court's "failure to prevent the harm must be . . .

deliberate under the 'rigorous requirements of culpability and causation.'"

*Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017) (quoting

*Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 415 (1997)).

A policymaker cannot have made a deliberate choice to shirk a constitutional

duty unless she is on notice that "the [disputed] conduct will violate constitutional

rights." *Id.*; *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (deliberate

indifference requires a "deliberate choice to follow a course of action . . . from

amongst various alternatives"). Here, Chief Judge Blount had no notice that judicial

bail decisions by Magistrate Defendants could amount to a policy that "will violate

constitutional rights." Indeed, Sixth Circuit case law says just the opposite: that bail

determination (i.e judicial decisions), is not an "execution of policy" as a matter of

law. *Johnson*, 125 F.3d at 335-36.[13] Plaintiffs must "connect the policy to the [36th

District Court] itself and show that the particular injury was incurred because of the

execution of that policy." *Id.* at 335 (citation omitted). Because they cannot do so

here, their Complaint should be dismissed with prejudice.

### E.    Plaintiffs Fail to State a Sixth Amendment Claim

Plaintiffs allege that not providing counsel at arraignment violates the Sixth

Amendment because setting bail may "prejudice the fairness of subsequent criminal

proceedings." (DE 1, ¶¶164-65). Plaintiffs are wrong. While the Sixth Amendment

---

[13]   In the Sixth Amendment context in particular, long established precedent holds that criminal defendants are, in fact, not entitled to appointed counsel at a Michigan arraignment. *See infra* Section III.E.

guarantees the right to assistance of counsel in "all criminal prosecutions," "it does not attach until a prosecution is commenced." *Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 198 (2008) (quotation omitted). Even then, counsel need only "be appointed within a reasonable time after attachment," and represent the defendant at "critical stage[s]" of the proceedings. *Id.* at 212. *Accord Turner v. United States*, 885 F.3d 949, 952 (6th Cir. 2018) (en banc) (Only after the "Sixth Amendment Right to counsel attaches" do "criminal defendants "have a right to assistance of counsel during 'critical stages' of the prosecution.")

Arraignment is the point of attachment that generally begins prosecution against the defendant: where he makes his "initial appearance before a judicial officer," learns of the charges against him, and a magistrate judge "determines the conditions for pretrial release." *Rothgery*, 501 U.S. at 199 (citations omitted). However, no court examining Michigan's criminal procedures has adopted Plaintiffs' position here – that such "attachment" also necessarily constitutes a "critical stage" at which defendants are entitled to the assistance of counsel.

"Arraignment has differing consequences in the various jurisdictions." *Hamilton v. Ala.*, 368 U.S. 52, 54 fn.4 (1961). Arraignment may amount to a critical stage if "[a]vailable defenses may be irretrievably lost if not then and there asserted," *id.* at 54, or "where rights are preserved or lost" at arraignment, *White v. Md.*, 373 U.S. 59, 60 (1963). If representation at arraignment were "necessary to assure a

meaningful defen[s]e," such that "counsel's absence might derogate from the accused's right to a fair trial," that too would make it a "critical" point at which counsel is required. *United States v. Wade*, 388 U.S. 218, 226 (1967). None of these conditions apply at a Michigan arraignment.

To the contrary, the Sixth Circuit in *Lundberg v. Buckhoe,* 389 F.2d 154, 158 (6th Cir. 1968), held that a petitioner who appeared at a Michigan arraignment without representation and waived his right to a preliminary hearing was not denied the right to counsel.

> In Michigan the 'preliminary examination has for its limited purpose only the determination by a magistrate whether there is probable cause to bind the defendant over for trial.' *People v. Zaleski*, 133 N.W.2d 175 (1965); See *People v. Podolski*, 518, 52 N.W.2d 201, cert. denied, 344 U.S. 845 (1952). In light of the above principles, **it cannot be said that Michigan's arraignment and preliminary examination proceedings, in and of themselves, constitute a critical stage of the proceedings**. Nor were there any special circumstances in appellant's case which might suggest that the proceedings were critical; no plea or statement was in fact obtained from appellant at his arraignment and, aside from his right not to be held in custody absent probable cause, appellant neither lost nor waived any right or defense. The fact that appellant might have received some collateral benefit in the form of pretrial discovery had he not waived examination is immaterial. [*Id*. (emphasis added)].

*Accord Van v. Jones*, 475 F.3d 292, 311 (6th Cir. 2007) (reaffirming *Lundberg*); *Meriweather v. Burton*, 2015 WL 7450068, *4 (6th Cir. Nov. 24, 2015) ("[I]n Michigan, the circumstances surrounding an arraignment do not require an attorney to be present"); *People v. Horton*, 296 N.W.2d 184, 189 (Mich. App. 1980).

Plaintiffs' allegation of a *de facto* pretrial detention policy do not compel a different conclusion because the risk of pretrial detention alone does not make an arraignment "critical." *Gerstein v. Pugh*, 420 U.S. 103, 122-23 (1975) ("[P]retrial custody may affect to some extent the defendant's ability to assist in preparation of his defense, but this does not present the high probability of substantial harm" necessary to be a critical stage). Knowing this, Plaintiffs also allege that bail determination is a critical stage because it "may prejudice the fairness" of the accused's position in "plea bargain[ing]." (DE 1, ¶¶164-65). This misinterprets the Sixth Amendment promise of the "Assistance of Counsel for defence," which means "defense at trial, not defense in relation to other objectives that may be important to the accused." *Rothgery*, 554 U.S. at 216 (ROBERTS, C. J., concurring). Asking whether representation of counsel *may* "benefit" the accused "when bail is set," or whether there is a possibility of future prejudice, does not satisfy criticality. (DE 1, ¶¶164-65); *Jones*, 475 F.3d at 311 ("possibility" that obtaining pretrial release at arraignment could give defendant a "comparatively minor advantage" in pretrial discovery does not make arraignment a critical stage).

Plaintiffs "make[] the fundamental 'mistake' of confusing the 'critical stage question' with the 'attachment question[,]'" which "must be kept 'distinct.'" *Turner*, 885 F.3d at 953 (quoting *Rothgery*, 554 U.S. at 211). The Sixth Circuit rejected *en banc* an attempt to collapse the two inquiries in *Turner*, holding that the Sixth

38

Amendment does not extend to preindictment plea negotiations even though the accused *does* have a right to counsel for plea negotiations after his indictment. 885 F.3d at 953. "The Supreme Court's attachment rule is crystal clear." *Id.* "Because the Supreme Court has not extended the Sixth Amendment right to counsel at any point before the initiation of adversary judicial criminal proceedings," the Sixth Circuit "may not do so." *Id.* Because Plaintiffs' demand for counsel before the state initiates adversary judicial proceedings is foreclosed by precedent, Plaintiffs' Sixth Amendment Count must be dismissed.

## IV.    <u>CONCLUSION</u>

The Court should grant Judicial Defendants' Motion to Dismiss, grant Judicial Defendants attorneys' fees under 42 U.S.C. §1988(b), and any further relief to which they are entitled.

Respectfully submitted,
DICKINSON WRIGHT PLLC
By: /s/ Scott A. Petz
Scott A. Petz (P70757)
Lauren A. Kwapis (P76642)
Alma Sobo (P81177)
*Attorneys for Judicial Defendants*
DICKINSON WRIGHT PLLC
2600 W. Big Beaver Road, Suite 300
Troy, MI 48084
(248) 433-7200
spetz@dickinsonwright.com
lkwapis@dickinsonwright.com
asobo@dickinsonwright.com
*Attorneys for Judicial Defendants*

DICKINSON WRIGHT PLLC
Martin D. Holmes (TN 012122)
424 Church Street, Suite 800
Nashville, TN 37219
(615) 244-6538
mholmes@dickinsonwright.com
*Attorneys for Judicial Defendants*

Dated: June 19, 2019

DICKINSON WRIGHT PLLC
K. Scott Hamilton (P44095)
Aaron V. Burrell (P73708)
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3500
khamilton@dickinsonwright.com
aburrell@dickinsonwright.com
*Attorneys for Judicial Defendants*

Gerald K. Evelyn (P29182)
535 Griswold Street, Suite 1000
Detroit, MI  48226-3692
(313) 962-3500
geraldevelyn@yahoo.com
*Co-Counsel for Judicial Defendants*